[No. 21970-4-III.   Division Three.   March 16, 2004.]

*In the Matter of the Marriage of* DAVID A. DODD, *Appellant,* and KAREN L. DODD, *Respondent.*

*Dennis C. Cronin*, for appellant.
*Bevan J. Maxey*, for respondent.

BROWN, C.J. — David Dodd appeals a Spokane Superior Court child support modification order entered in favor of Karen Dodd based upon income imputed to Mr. Dodd under RCW 26.19.071(6). The issue is whether the trial court properly revised its court commissioner's order, which also imputed income to Mr. Dodd, but at a lower amount based upon what the commissioner believed Mr. Dodd could earn. Because under this record Mr. Dodd's income was unknown, we hold the superior court properly acted within its revision powers. Accordingly, we affirm.

## FACTS

In May 1998, Mr. Dodd was ordered to pay $1,018 per month in child support for his two children based upon a net monthly income at $3,419. Mr. Dodd's failure to pay child support led to a series of support enforcement contempt proceedings. In June 2001, a superior court commissioner ordered Mr. Dodd to pay $29,105.04 in child support accrued from April 1998. The commissioner required Mr. Dodd to seek support modification, apparently to straighten out Mr. Dodd's confusing earning history working as a self-employed person in the logging industry.

In July 2001, Mr. Dodd petitioned for support modification, claiming a total monthly net income of $997.38 with total monthly expenses of $1,806.00. He filed tax returns and other financial statements in support of his petition.

The commissioner continued the matter until January 2003, partly so Mr. Dodd could provide the State with copies of his 2000 and 2001 tax returns. Deposed, Mr. Dodd admitted his logging customers would write checks to his girl friend to pay for his services. Mr. Dodd's girl friend would cash the checks and give the money to him. Mr. Dodd said he did not keep a checking account in order to prevent

the State from seizing money to satisfy his unpaid child support.

In its oral ruling the commissioner partly stated:

Now, the father's situation is controversial at best. He describes himself as a heavy equipment operator and a logger. He is self-employed. He used to go under the name Shadow Digger Bobcat, but he indicates that since the divorce he's been forced to sell off his equipment and is no longer able to work at that job. He presently, and apparently for the last several years, has worked at a [sic] independent logging business on a pretty sporadic business [sic]. If you believe him and his tax returns, he is showing fairly minimal gross receipts, and those are either partially or entirely offset by listed expenses, so that his income returns are showing a nominal income at best.

He has a rather unique financial arrangement. He apparently is living with his girlfriend, and when he does his logging business he asks the mills, who employ him on an independent contractor basis, to pay his girlfriend, not him, and she then apparently cashes the check and gives him the money. When asked in his deposition why he does that, he indicates that he can't have a checking account because whenever he does the State of Washington simply attaches it for back child support. And so, I guess he was fairly candid about his deception with the State of Washington. But it makes for an almost impossible situation for me to try and figure out what he is actually earning. I don't—I don't know what he is earning.

He had indicated through counsel that the State of Washington has been taking from him $300 a month in child support for some time. I don't know how the state is taking anything from him if, by his own admission, he is essentially taking money in cash and doesn't have a checking account. So I don't have the details on that.

Having said that, I am satisfied that Mr. Dodd does not earn the kind of money that he earned prior to the divorce. I don't know what he is earning; I can't tell. So, I'm going to impute some income to him as to what I think would be a minimal amount that he is earning.

. . . .

He apparently is living with his girlfriend, and it's not clear to me what they're doing for resources, what they're doing for

money. There are allegations that he owns a bunch of equipment, including a $35,000 piece of logging equipment, but he indicates he still owes $35,000 and it may have gone back to the original seller. It's not clear to me. Like I said, I have questions of credibility, here, frankly, and I don't know what's going on.

. . . .

So, having said that, I am choosing to impute an amount of money to Mr. Dodd that I know he can make, and that is somewhere in the neighborhood of $9 to $9.50 an hour, working for somebody else. And I suspect Mr. Dodd has a personality that makes it difficult for him to work for somebody else, but there doesn't appear to be any other reason why he doesn't. This logging business of his is a bust by any account, and he needs to simply take a job and work for somebody else so that he can make at least nominal payments toward supporting his teenaged daughters.

Clerk's Papers (CP) at 248-51.

On February 14, 2003, the commissioner entered consistent findings of fact and conclusions of law incorporating the above-quoted oral decision, then ordered a support modification by imputing $1,300 in monthly income to Mr. Dodd with a transfer payment of $356 per month. Mrs. Dodd moved to revise the commissioner's ruling.

On March 13, 2003, the revision court, partly ruled:

Well, the Child Support Guidelines provide in part . . . "if a parent is unemployed, under-employed, or the income of a parent is unknown," then you refer to the imputation of income. "In the absence of the information to the contrary, a parent's imputed income shall be based upon the following table . . . ."

And that is what I am going to use for both parties.

I am in total agreement with [Mrs. Dodd's counsel]. One of these days the rules in the state court are going to be changed like they are in federal court where you have to disclose everything at the beginning of a case.

Frankly, I don't believe [Mr. Dodd] should be hiding behind whatever may be going on with [his girl friend].

At the same time, Mrs. Dodd has an obligation, too.

And so you can go ahead and you can recalculate the child support based upon imputed income for both of them.

Report of Proceedings at 25-26.

The revision court arrived at an imputed monthly income of $2,610 for Mr. Dodd and $1,957 for Mrs. Dodd. The revision court entered a consistent notation order incorporating its oral ruling. The revised order of child support states: "The income of the obligor is imputed at $2610.00 because the obligor's income is unknown." CP at 283. "The obligor parent shall pay $755.00 per month." CP at 284. The revision court then entered a revised order granting modification of child support.

Mr. Dodd appealed.

## ANALYSIS

The issue is whether the revision court erred in revising the commissioner's ruling by imputing income to Mr. Dodd in accordance with RCW 26.19.071(6).

■ "The actions of a superior court commissioner are subject to revision by a superior court judge." *State v. Lown*, 116 Wn. App. 402, 407, 66 P.3d 660, *review denied*, 150 Wn.2d 1024 (2003) (citing RCW 2.24.050; *State v. Smith*, 117 Wn.2d 263, 268, 814 P.2d 652 (1991)). "In cases such as this one, where the evidence before the commissioner did not include live testimony, then the superior court judge's review of the record is de novo." *In re Marriage of Moody*, 137 Wn.2d 979, 993, 976 P.2d 1240 (1999).

The revision court is in the same position as this court. *Lown*, 116 Wn. App. at 407. Accordingly, if a party challenges the commissioner's findings of facts and conclusions of law, the revision court reviews the findings for substantial evidence and the conclusions of law de novo. *Id.* at 407-08. "The superior court has the authority to review the records of the case, and the findings of fact and conclusions of law entered by the court commissioner." *In re Marriage of Balcom*, 101 Wn. App. 56, 59, 1 P.3d 1174 (2000) (citing RCW 2.24.050).

But the revision court's scope of review is not limited merely to whether substantial evidence supports the commissioner's findings. *In re Welfare of Smith*, 8 Wn. App. 285, 288, 505 P.2d 1295 (1973). Instead, the revision court has full jurisdiction over the case and is authorized to determine its own facts based on the record before the commissioner. *In re Dependency of B.S.S.*, 56 Wn. App. 169, 171, 782 P.2d 1100 (1989); *In re Welfare of McGee*, 36 Wn. App. 660, 662, 679 P.2d 933 (1984); *Smith*, 8 Wn. App. at 288-89.

■ Mrs. Dodd argues Mr. Dodd failed to challenge the commissioner's findings of fact. However, the superior court revision order supersedes the commissioner's ruling. Thus, our focus is whether the superior court abused its discretionary authority under RCW 2.24.050 when it revised the commissioner's support modification ruling.

■ ■ "A trial court exercises broad discretion in its decision to modify the child support provisions of a divorce decree." *In re Marriage of Blickenstaff*, 71 Wn. App. 489, 498, 859 P.2d 646 (1993) (citing *Lambert v. Lambert*, 66 Wn.2d 503, 508, 403 P.2d 664 (1965)). "Under this standard, the reviewing court cannot substitute its judgment for that of the trial court unless the trial court's decision rests on unreasonable or untenable grounds." *In re Marriage of Leslie*, 90 Wn. App. 796, 802-03, 954 P.2d 330 (1998) (citing *In re Marriage of Griffin*, 114 Wn.2d 772, 779, 791 P.2d 519 (1990)); *Pollock v. Pollock*, 7 Wn. App. 394, 399, 499 P.2d 231 (1972)).

■ Here, the revision court reviewed the record, heard the arguments, and agreed with the commissioner that it was impossible to determine Mr. Dodd's income because of his deceptions. In other words, Mr. Dodd's income was unknown. Mr. Dodd's deceptions destroyed his credibility, and impaired the weight of his reduced income claims. As the party seeking child support modification, Mr. Dodd bore the burden of showing his financial condition justified a reduced obligation. RCW 26.09.170; *Lambert*, 66 Wn.2d at 508; *Leslie*, 90 Wn. App. at 802.

The commissioner imputed Mr. Dodd's income based on a low estimated hourly wage under unknown facts. The revision court viewing the same record relied on RCW 26.19.071(6) to impute Mr. Dodd's income based on census figures.

While revision is much like an appeal, under RCW 2.24.050 and the developed case law the superior court judge is not required to defer to the fact-finding discretion of the commissioner like we defer to the superior court's exercise of fact-finding discretion on appeal. *B.S.S.*, 56 Wn. App. at 171; *Smith*, 8 Wn. App. at 288-89. A revision court may, based upon an independent review of the record, redetermine both the facts and legal conclusions drawn from the facts. *B.S.S.*, 56 Wn. App. at 171. Thus, the superior court on revision may review factual determinations for substantial evidence, but is not limited to a substantial evidence inquiry under RCW 2.24.050. *Smith*, 8 Wn. App. at 288-89. Under *Smith*, the superior court has full jurisdiction over the case.

▮▮▮ Where income is unknown because of voluntary underemployment or voluntary unemployment, RCW 26-.19.071(6) provides, "a parent's imputed income shall be based on the median income of year-round full-time workers as derived from the United States bureau of census, current population reports, or such replacement report as published by the bureau of census." We interpret a statute de novo. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). Absent ambiguity, we interpret the plain language of the face of the statute and closely related statutes in light of the underlying legislative purpose. *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003); *Wagg v. Estate of Dunham*, 146 Wn.2d 63, 73, 42 P.3d 968 (2002). It is consistent with the plain language of the statute and its underlying purpose to consider a parent who conceals income in order to escape his or her support obligation as voluntarily underemployed or voluntarily unemployed for purposes of imputing income under RCW 26.19.071(6).

Here, the revision court correctly accepted the commissioner's finding that Mr. Dodd's income was impossible to compute due to his deceptions, and thus unknown. The record contains substantial evidence that Mr. Dodd's admitted dishonesty rendered his claimed income unverifiable. *See* RCW 26.19.071(2) ("Other sufficient verification shall be required for income and deductions which do not appear on tax returns or paystubs."). Mr. Dodd bore the burden of proving his reduced income and failed. *Lambert*, 66 Wn.2d at 508. Imputing income in accordance with census tables was proper under this record because Mr. Dodd's situation was analogous to voluntary underemployment or voluntary unemployment. RCW 26.19.071(6). Accordingly, the superior court did not err in revising the commissioner's ruling because Mr. Dodd's deceptions made his income impossible to ascertain under this record.

## Attorney Fees

■ Mrs. Dodd demands attorney fees pursuant to RAP 18.1, RAP 18.9, CR 11, RCW 4.84.185 and RCW 26.09.140. Mr. Dodd's appeal was not frivolous for purposes of sanction-based fees, but Mrs. Dodd prevails for purposes of RAP 18.1 and RCW 26.09.140. Nevertheless, neither the commissioner nor the revision court awarded fees below, reasoning the parties could pay their own fees. On this record, we see no reason to exercise our discretion to award attorney fees on appeal. RCW 26.09.140.

Affirmed.

KURTZ and KATO, JJ., concur.